

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

**ENTERED**
**01/20/2009**

| | | |
|---|---|---|
| IN RE: | § | |
| REICHMANN PETROLEUM CORP.; fka | § | CASE NO: 06-20804 |
| RICHMAN PETROLEUM CORP. | § | |
| Debtor(s) | § | |
| | § | CHAPTER  11 |
| | § | |
| REICHMANN PETROLEUM CORP. | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 08-2011 |
| | § | |
| WILLIAM GOEN, *et al* | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION AND ORDER GRANTING
## MOTION BY THE PATHFINDER GROUP FOR SUMMARY JUDGMENT

On this day came on for consideration the Motion for Summary Judgment filed by the Pathfinder Holdings Trust, Mustang Energy, Howard Lou  Enterprises, Coast to Coast Energy Partners, Ltd., Texas Wellspring Energy Group, Inc., Parker County Energy Partners, Ltd., Parker County Seven, Ltd., Genesis Energy Holdings, LLC, and Wellspring Energy (hereinafter the "Pathfinder Group"), and joined by  Reichmann Petroleum Corporation ("Reichmann"), and South Barnett Resources, LLC, and Texas Wyoming Drilling, Inc. The Court, having heard the arguments of counsel and having reviewed the summary judgment evidence, finds that there are no genuine issues of material fact and judgment should be entered in favor of Plaintiffs.

### JURISDICTION AND VENUE

This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334, as specifically set forth in this Court's Order dated June 16, 2008 (Docket No. 47), and venue is proper pursuant to 28 U.S.C. § 1409 because this

proceeding is related to a case under Title 11 of the United States Code (the "Bankruptcy Code").

## UNCONTROVERTED FACTS

On or about May 8, 2006, Defendants William Goen and Bernice Goen (the "Goens") executed duplicate originals of that certain Oil, Gas and Mineral Lease (the "Goen Lease") granting mineral rights to Reichmann as lessee in approximately forty-one (41) acres of real property in Parker County, Texas.  A Memorandum of Oil, Gas and Mineral Lease pertaining to the Goen Lease, was recorded on May 19, 2006 in the Official Records of Parker County, Texas as Document No. 598356 in Book 2436 at Page 1491.

On or about May 8, 2006, Defendants Eldon Holman and Iris Holman (the "Holmans") executed that certain Oil, Gas and Mineral Lease (the "Holman Lease") granting mineral rights to Reichmann as lessee in approximately 93 acres of real property in Parker County, Texas. A Memorandum of Oil, Gas and Mineral Lease pertaining to the Holman Lease, was recorded on May 19, 2006 in the Official Records of Parker County, Texas as Document No. 598357 in Book 2436 at Page 1492.

On or about May 8, 2006, Defendant Nels Jahren ("Jahren") executed that certain Oil, Gas and Mineral Lease (the "Jahren Lease", and collectively with the Holman Lease and the Goen Lease as the "Leases") granting mineral rights to Reichmann as lessee in approximately 92 acres of real property in Parker County, Texas. A Memorandum of Oil, Gas and Mineral Lease pertaining to the Jahren Lease was recorded on May 19, 2006 in the Official Records of Parker County, Texas as Document No. 598358 in Book 2436 at Page 1493.

Each of the Leases contains the following paragraph regarding the preservation of the Leases through the payment of shut-in royalties:

> If at the expiration of the primary term or at any time or times after the primary term, there is a well or wells capable of producing oil or gas in paying quantities or log or testing results indicate that a well that has been drilled to its total depth will be capable of producing oil or gas in paying quantities upon final completion on said Land or land or leases pooled therewith but oil or gas is not being sold or used and this lease is not then being maintained by production, operation or otherwise, this lease shall not terminate, (unless released by the Lessee), and it shall nevertheless be considered that oil and/or gas is being produced from said Land within the meaning of paragraph 2 herein.

Leases, Paragraph 4 .

Paragraph 4 of the leases continued, and was interlineated by the Defendants to specify the amount of shut-in royalties to be paid by Reichmann to the Defendants, and provides in pertinent part as follows:

> However, in this event, Lessee shall pay or tender as shut-in royalty to the Lessor, or tender for deposit to the credit of Lessor in the _____ Bank at _____ (address), (which bank and its successors are Lessor's agent and shall continue as the depository bank for all shut-in royalty payments hereunder regardless of changes in ownership of said Land or shut-in royalty payments) a sum determined by multiplying ~~one dollar ($1.00)~~ [$5.00] per acre for each acre then covered by this lease, provided however, in the event said well is located on a unit comprised of all or portion of said Land and other land or leases a sum determined by multiplying [$5.00] ~~one dollar ($1.00)~~ per acre for each acre of said Land included in such unit on which said shut-in well is located.  If such bank (or any successor bank) should fail or refuse to accept such payment, Lessee shall re-tender such payment within thirty (30) days following receipt from Lessor of a proper recordable instrument naming another bank as agent to receive such payment or tenders.

Leases, Paragraph 4.

Paragraph 4 of the Leases also includes an explanation as to the timing for payment of any shut-in payments, and provides in pertinent part as follows:

> Such shut-in royalty payment shall be due on or before the expiration of ninety (90) days after ~~(a) the expiration of the primary term, or~~ (b) the date

of completion of such well, or (c) the date on which oil or gas cease to be sole or used, or (d) the date this lease is included in a unit on which a well has been previously completed and shut-in, or (e) the date the lease ceases to be otherwise maintained, whichever be the later date.  It is understood and agreed that no shut-in royalty payments shall be due during the primary term.

Leases, Paragraph 4.

Paragraph 4 of the Leases then describes the effect of tendering such shut-in

payments as follows:

In like manner and upon like payments or tenders on or before the next ensuing anniversary of the due date for said payment, Lessee shall continue to pay such shut-in royalty for successive periods of one (1) year each until such time as this lease is maintained by production or operations.  However, if actual production commences within the applicable 90 day period, a shut-in royalty payment shall not be required or, if a shut-in royalty payment is tendered, no additional shut-in payment will be due until the next ensuring anniversary of the due date for said tendered payment regardless of how many times actual production may be commenced and shut-in during such one (1) year period.

Leases, Paragraph 4.

Pursuant to Addendum I on Exhibit "B" to each of the Leases, the Primary Term

of the Leases was eighteen (18) months, or from May 8, 2006 through November 8,

2007.  Following the execution of the Leases in May 2006, Reichmann commenced

drilling operations on the Well in accordance with its rights under the Leases.  The Well

was spudded on August 20, 2006.

Once Reichmann concluded drilling operations, logs (the "Reichmann Logs")

were run by Goesite, Inc. and Schlumberger on behalf of Reichmann to the bottom of the

well bore to measure the properties of the surrounding rock and determine the likelihood

that the well would produce in paying quantities. The Primary Term of the Leases

expired on November 8, 2007. The Leases ceased "to be otherwise maintained" on

November 8, 2007 when the primary term ended and there was no production or operations taking place on the Leases.

On November 15, 2007, one week after the end the Primary Term of the Leases, Reichmann tendered a separate check in the amount of $230.09 (together, the "Shut-in Payments") to the Goens, Holmans, and Jahren.  None of the three (3) checks were ever negotiated.

## DISCUSSION

### A.      Summary Judgment Standard

A party is entitled to summary judgment upon a showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986); *Melton v. Teachers Inc. & Annuity Ass'n of America*, 114 F.3d 557, 559 (5th Cir. 1997); Fed. R. Civ. Proc. Rule 56(c), and Fed. R. Bankr. Proc. 7056.  To oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22(1986); *Floors Unlimited, Inc. v. Field Crest Cannon, Inc.,* 55 F.3d 181, 184 (5th Cir. 1995); Fed. R. Civ. Proc. Rule 56 and Fed. R. Bankr. Proc. 7056.

### B.      The Clear and Unambiguous Terms of the Leases Control

An Oil and gas lease is a contract and must be interpreted as one.  *See Hitzelberger v. Samedan Oil Corp.,* 948 S.W.2d 497, 503 (Tex. App-Waco 1997, writ denied).  In construing an unambiguous oil and gas lease, the court must seek the intention of the parties as it is expressed on the lease.  *See Heritage Resources, Inc. v.*

*NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *see also Browning Oil Co. v. Luecke*, 38 S.W.3d 625, 640 (Tex. App.-Austin 2000, pet. denied).

As is admitted in the Defendant's Motion for Judgment on the Pleadings (Docket No. 53), the Leases are unambiguous, and the intent of the parties must be gleaned solely from the content of these Leases.  Because the Leases are unambiguous, the Court will enforce the Leases as written.  *Transcontinental Gas Pipeline Corp. v. Texaco, Inc.* 35 S.W.3d 658, 665 (Tex.App.-Houston [1st Dist.] 2000, pet. denied).

Therefore, this Court's determination of the parties' intent should not take into consideration the alleged "intentions" described throughout the Defendant's Motion for Judgment on the Pleadings, but should instead focus on the four corners of  the Leases.  *Anadarko Petroleum Corp. v. Thompson,* 94 S.W. 3d 550, 554 (Tex. 2002).

### C.      Reichmann Exercised its Rights Under the Shut-in Clauses in Paragraph 4 of the Leases

Generally, an oil and gas lease grants to the lessee a fee simple determinable in the mineral estate covered by the leases.  *Natural Gas Pipeline Co. of Am. v. Pool,* 124 S.W.3d 188, 192 (Tex. 2003).  Accordingly, in absence of a shut-in royalty clause, or the lease savings clause, the lease will automatically terminate upon the expiration of the primary term unless the lease is then producing at paying quantities, *Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 315 (Tex.-Amarillo, pet. denied).

In order to prevent the automatic termination of a lease when the lessee has drilled a well but is unable to produce it at the end of the primary term, parties often incorporate so-called "shut-in royalty clauses" into their lease. A shut-in royalty clause generally

provides for periodic payments of a designated—and typically, nominal—amount, the payment of which constitutes substitute production that will maintain the lease in effect for the period stipulated in the shut-in royalty clause.   *See generally* E. Smith and J. Weaver, *Texas Law of Oil and Gas,* §4.5[C][1]; John S. Lowe, *Shut-in Royalty Payments,* 5 E. Min. L. Inst. 18-1 (1984); Jeffrey G.  Shrader, *Lease Maintenance: Low Flow and Shut-in Issues,* 46th Oil & Gas Inst. 8-1 (1995).

As is described in paragraphs 19-23 hereinabove, Paragraph 4 of each of the Leases contains identical shut-in royalty clauses, which specifically describe the basis for invoking the right to pay shut-in royalty, the amount of such shut-in payments, the timing for such shut-in payments, the effect of tendering such shut-in payments, and an explanation of the repercussions of failing to timely or properly tender shut-in payments.

Therefore, in order to determine whether Reichmann timely and properly exercised its rights under the shut-in clauses in the Leases, and thereby maintained the Leases up through and including November 8, 2008, it is necessary to examine each of the four prerequisites.

### 1. Circumstances Existed Such That Reichmann was Entitled to Invoke Shut-in Royalty Clause Found in the Leases

In accordance with the language of the shut-in clause found in Paragraph 4 of the Leases, there are two (2) situations where shut-in royalty payments are authorized to perpetuate the respective Lease: (1) There is a well capable of producing oil or gas in paying quantities; or (2) Log or testing results indicate that a well that has been drilled to its total depth will be capable of producing oil or gas in paying quantities upon final completion of the well. It is undisputed that the Well is not presently capable of

producing oil or gas in paying quantities. However, current production and/or capability are not the exclusive means for invoking the right to pay shut-in royalty.

Reichmann also had the right to maintain the Leases by paying shut-in royalty to the Defendants as a result of there being logs or testing indicating future capability, Defendants' position should be rejected because it violates the basic tenet of contract construction that every clause in a contract is intended to have some effect. *See Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex. 1996).

Each of the Leases specifically contemplated that Reichmann would be able to maintain each of the Leases by paying shut-in payments if "log or testing results indicate that a well that has been drilled to its total depth will be capable of producing oil or gas in paying quantities upon final completion ….." The Reichmann Logs, which were run on the Well following an initial perforation in December 2006, have been reviewed by a leading expert in the field of oil and gas analysis at the request of the Pathfinder Group.

At the request of the Pathfinder Group, NuTech  Energy Alliance ("NuTech") utilized the Reichmann Logs and sophisticated technology intended to convert conventional logs into a shale evaluation specific to the Barnett Shale (which is the formation within which the horizontal lateral for the Well is drilled) to prepare an evaluation (the "NuTech Evaluation") of the Well's future capabilities.

Mr. William N. Holt Jr. ("Holt"), a NuTech engineer, has reviewed the NuTech Evaluation, and has concluded that the Reichmann Logs clearly indicate that the Well will absolutely be capable of producing oil or gas in paying quantities upon final completion.  Specifically, Holt confirmed that the Barnett Shale interval in the Well was

approximately one hundred eighty-one (181') feet, has a total permeability (Kh) of 22.515 ud/ft, and is sufficient to commercially produce hydrocarbon gas.

Because there can be no factual dispute as to the discreet fact that the Reichmann Logs indicate that the Well will produce in paying quantities upon final completion, Reichmann was entitled to initially exercise its rights to pay shut-in payments to maintain the Leases.

## 2. The Shut-in Payments Were for the Correct Amount

Each of the Shut-in Payments in the amount of $230.09 was specifically calculated by Reichmann in compliance with the express terms and conditions of the Leases.

## 3. The Shut-in Payments Were Timely

In accordance with the language of the shut-in clause found in Paragraph 4 of the Leases, any shut-in royalty must be paid by Reichmann on or before the expiration of ninety (90) days after the later of:

(a)  the expiration of the primary term, or
(b)  the date of completion of such well, or
(c)  the date on which oil or gas ceases to be sold or used, or
(d)  the date this lease is included in a unit on which a well has been previously completed and shut-in or
(e)  the date the lease ceases to be otherwise maintained.

As a result of certain interlineations by the Defendants on the Leases, the payment deadline in subpart (a) was stricken from each of the Leases and was rendered inapplicable.

The payment deadlines under subparts (b), (c) and (d) do not apply under the circumstances. The applicable deadline for purposes of this matter is found in subpart (e) of Paragraph 4 of the Leases.  The Leases ceased "to be otherwise maintained" on

November 8, 2007, when the primary term ended and there was no production or operations taking place on the Leases. Reichmann paid the Shut-in Payments to the Defendants on November 15, 2007, well within the ninety (90) day period that began to run on November 8, 2007.

### 4. The Effect of Reichmann Timely Paying the Shut-in Payments

In accordance with the language of the shut-in clause found in Paragraph 4 of the Leases, by timely submitting the Shut-in Payment to the Goens, Holmans, and Jahren, Reichmann maintained the effectiveness of the Lease for the period of one (1) year, or until November 15, 2008. The language of the shut-in clause found in the Leases, further dictates that Reichmann, or any assignee of the Leases, may continue to maintain the Leases for successive period of one (1) year each by submitting shut-in payments to the Defendants on or before the expiration of the most recent one (1) year extension.

### 5. Even the Failure Properly or Timely To Pay the Shut-in Payments Would not Terminate the Leases

Finally, Paragraph 4 of the Leases concludes by specifically providing that the "Lessee's failure to pay or tender or to properly or timely pay or tender any such sum as shut-in royalty shall render Lessee liable for the amount due, but it shall not operate to terminate this Lease." (emphasis added). Assuming, *in arguendo*, that the shut-in payments tendered to the Defendants by the Debtor on November 15, 2007, were not timely, which the Pathfinder Group specifically denies, the Leases would still survive and the Defendants would merely have a claim against the Reichmann for the amount of such shut-in payments.

**CONCLUSION**

The Plain language of the "shut-in clause" in each of the Leases allows the Leases to be maintained by the payment of shut-in royalty if the Well either (a) was capable of producing in paying quantities or (b) log or testing results indicate that the Well will be capable of producing oil or gas in paying quantities upon final completion of the Well. The Reichmann Logs, which were run on behalf of Reichmann after the Well was drilled to its total depth, incontrovertibly reflect that the Well will be capable of producing hydrocarbon gas in paying quantities upon final completion.  Because of this fact, Reichmann was entitled to exercise its right to pay shut-in-payments in lieu of actual production.

Reichmann did, in fact, timely and properly submit such Shut-in Payments to the Defendants in the correct amount, and thereby maintain the effectiveness of the Leases for an additional one (1) year period, or through November 8, 2008. Finally, in accordance with Paragraph 4 of the Leases, Reichmann or any assignee of Reichmann's rights under the Leases should be permitted to continue to maintain the Leases in one (1) year intervals by submitting annual shut-in payments on or before the expiration of the last extension of the Primary Term.

It is therefore ORDERED that the Motion for Summary Judgment is hereby GRANTED.

It is further ORDERED that Reichmann's tender of the Shut-in Payments to the Goens, Holmans, and Jahrens on November 15, 2007, was sufficient under Paragraph 4 of the Leases to maintain the effectiveness of the Leases through at least November 15, 2008, and that the Leases may be maintained for one (1) year intervals so long as

Reichmann or any assignee or the Leases continues to timely tender the shut-in royalty

payments contemplated in Paragraph 4 of the Leases.

Dated: 01/20/2009

_____
RICHARD S. SCHMIDT
United States Bankruptcy Judge